IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and CATHERINE WENSKUS, not individually, but as Administrator of the Funds,<br><br>       Plaintiffs,<br><br> v.<br><br>EARP CONCRETE CUTTING, INC., an Indiana corporation,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 20-cv-1332<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, not individually, but as Administrator of the Funds (hereinafter collectively the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C. V. Mosenson, and Sara S. Schumann, for their Complaint against Defendant Earp Concrete Cutting, Inc., an Indiana corporation, state:

## COUNT I
**(Failure to Pay Fringe Benefit Contributions as Revealed by Submitted Reports)**

1.  Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer Trusts established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5). The Funds maintain their respective Plans, which are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(A), pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Earp Concrete Cutting, Inc., (hereinafter the "Company" or "Earp"), is an Indiana corporation. At all times relevant herein, the Company did business within this District and was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

2

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to a collective bargaining agreement, the most recent of which became effective June 1, 2017 ("Agreement"). At all times relevant herein, the Company's employees performed work covered by the same Agreement. (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in Paragraph 7 below, is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Trust Fund (the "Training Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the Chicago Area Independent Contractors Association ("CAICA"), the Builders' Association of Greater Chicago ("BAC"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Illinois Road Builders Association ("IRBA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Midwest Wall and Ceiling Contractors ("MWCC") the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Contractors' Association of Will and Grundy Counties ("CAWGC") and the Illinois Small Pavers Association ("ISPA") to act as an agent in the collection of contributions due to those funds.

8.  The Agreement, the Funds' respective Agreements and Declarations of Trust, and the Training Fund Agreement and Declaration of Trust, obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits, and for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, and the Training Fund Agreement and Declaration of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

9.  The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. The Agreement obligates the Company to obtain and maintain a surety bond to insure future wages, pension, and welfare contributions.

14. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed Covered Work during the time period of November 2019 forward, and submitted but failed to pay its November and December 2019 reports. The reports show the following amounts owed:

   a.  benefit contributions totaling $1,054.78 due to the Laborers' Pension Fund for the November and December 2019 reports;

  b. benefit contributions totaling $786.63 due to the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the November and December 2019 reports;

  c. benefit contributions totaling $375.10 due to the Chicago Laborers' District Council Retiree Health and Welfare Fund for the November and December 2019 reports; and

  d. benefit contributions totaling $69.75 due to the Laborers' Training Fund for the November and December 2019 reports.

The November and December 2019 "Web Reports" – summaries showing the hours reported by the Company online – are attached hereto as Exhibit B.

 15. The Company's actions in failing to submit timely contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA, 29 U.S.C. §185.

 16. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company owes 20% liquidated damages on the unpaid November and December 2019 reports, a total of $457.26.

 17. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company owes 10% liquidated damages on all delinquently-submitted contributions paid prior to the filing of a lawsuit. The Company delinquently paid its May, August, September, and October 2019 fringe benefit reports, and therefore owes $497.33 in accumulated liquidated damages. A copy of the Company's Contractor Liquidated Damages History is attached hereto as Exhibit C.

 18. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust

Agreements, and federal common law, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Earp Concrete Cutting, Inc. as follows:

    a.    entering judgment in sum certain against the Company on the amounts reported due and owing pursuant to the November and December 2019 fringe benefits reports, plus liquidated damages in the amount of 20%, a total of $2,743.51;

    b.    entering judgment in sum certain against the Company on the liquidated damages incurred on previously late-paid reports, a total of $497.33;

    c.    ordering the Company to submit its books and records to an audit on demand;

    d.    entering judgment in sum certain against the Company on the amounts found due and owing pursuant to the audit, if any, including interest, liquidated damages, audit costs, and attorneys' fees and costs; and

    e.    awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT II
**(Failure to Timely Submit Reports and Pay Union Dues)**

19. Plaintiffs reallege paragraphs 1 through 18 of Count I as though fully set forth herein.

20. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers

union dues which have been or should have been deducted from the wages of covered employees.

21. Dues reports and union dues are due by the 10th day following the month in which Covered Work was performed. Dues reports and union dues which are not submitted in a timely fashion are assessed 10% liquidated damages.

22. Notwithstanding the obligations imposed by the Agreement, the Company performed Covered Work during the time period of January 2020 forward, and has failed to submit dues reports and dues that were deducted or should have been deducted from the wages of its employees performing Covered Work for the time period of January 2020 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

23. Pursuant to the Agreement and federal common law, the Company is liable for the unpaid union dues, as well as liquidated damages, accumulated liquidated damages, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Earp Concrete Cutting, Inc.:

    a. ordering the Company to submit its January 2020 forward dues reports;

    b. entering judgment in sum certain against the Company on the amounts due and owing pursuant to the January 2020 forward dues reports, including contributions, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs; and

    **c.** awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III
**(Failure to Timely Submit Reports and Pay Fringe Benefit Contributions)**

24. Plaintiffs reallege paragraphs 19 through 23 as though fully set forth herein.

25. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed covered work during the time period of January 2020 forward, but has:

    a. failed to submit reports and pay contributions to Plaintiff Laborers' Pension Fund for the period of January 2020 forward, thereby depriving the Laborers' Pension Fund of contributions, income, and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

    b. failed to submit reports and pay contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of January 2020 forward, thereby depriving the Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

    c. failed to submit reports and pay contributions to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of January 2020 forward, thereby depriving the Retiree Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

    d. failed to submit reports and pay contributions to the Laborers' Training Fund for the period of January 2020 forward, thereby depriving the Training Fund of

contributions, income, and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

  e. failed to submit reports and pay contributions to one or more of the other affiliated funds identified in Paragraph 7 for the period of January 2020 forward, thereby depriving said fund(s) of contributions, income, and information needed to administer the said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

  f. failed to obtain and maintain a surety bond in accordance with the Agreement and the Funds' respective Agreements and Declarations of Trust.

26. The Company's actions in failing to submit timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

27. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for delinquent contributions, liquidated damages, interest, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Earp Concrete Cutting, Inc.:

  a. ordering the Company to submit its January 2020 forward fringe benefit reports;

      b.      entering judgment in sum certain against the Company on the amounts due and owing pursuant to the January 2020 forward fringe benefit reports, including contributions, interest, liquidated damages, and attorneys' fees and costs;

      c.      ordering the Company to obtain and maintain a surety bond in accordance with the Agreement and the Funds' respective Agreements and Declarations of Trust; and

      d.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

February 24, 2020

Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 West Jackson Boulevard
Suite 1415
Chicago, Illinois 60604
(312) 692-1540

Laborers' Pension Fund, et al.

By: /s/ Katherine Mosenson



# CONSTRUCTION & GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Earp Concrete Cutting Inc** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation of the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to th e expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Uni on agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agree ments, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to t he expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: **APRIL 1**, 20**19**

**Earp Concrete Cutting Inc**
(Employer)

FEIN No.: _____

**ACCEPTED:**
Laborers' Local Union No. **76**

By: **Nancy G Earp** (President)
(Print Name and Title)

By: _Anthony [signature]_
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

**Nancy Earp**
(Signature)

**304 N. 400 E.**
(Address)

By: _James P. Connolly, Business Manager_

**Valparaiso IN 46383**
(City, State and Zip Code)

By: _[signature]_
Charles LoVerde, Secretary-Treasurer

**219-203-2622**
(Telephone/Telefax)

For Office Use Only: **CA JCA***

**Earpcci@gmail.com**
(Email Address)

RECEIVED APR 04 2019

**Exhibit A**

Effective June 1, 2017    WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER    36

PRINTED: **02/05/2020**                  **LABORERS' PENSION & WELFARE FUNDS**        Page 1
TRANSACTION **1612827**                         **WEB REPORT PRINT**

| | | |
|---|---|---|
| CONTRACTOR **035767** | SUBMIT DATE | 02/04/2020 |
| EARP CONCRETE CUTTING INC | REPORT DATE | 11/2019 |
| 857 E SHAKESPEDARE DR | REPORT TYPE | Web -Online |
| VALPARAISO IN 46383-4129 | RECEIVED DATE | |
| (219)203-2622 | | |

**ONLINE PAYMENT:**

PAYMENT DATE:            BANK NAME:
PAYMENT AMOUNT:

PAYMENT NOTE:

NUMBER OF LABORERS     3     COMMENT:
REPORTED HOURS     43.00

| CNT | SOC SEC # | NAME | EXCEPTION | HOURS |
|---|---|---|---|---|
| 1 | | MICHAL MACIATA | | 19.00 |
| 2 | | TOMASZ LUKASZCYK | | 15.00 |
| 3 | | STANLEY SMITH | | 9.00 |

| FUND | RATE | CALCULATED AMOUNT | PENALTY |
|---|---|---|---|
| Welfare & Pension | 28.60 | 1,229.80 | 245.96 |
| Training | 0.90 | 38.70 | |
| | | **1,268.50** | **245.96** |

**Exhibit B**

PRINTED: **02/05/2020**  
TRANSACTION **1612830**

# LABORERS' PENSION & WELFARE FUNDS
## WEB REPORT PRINT

Page 1

| CONTRACTOR **035767** | | |
|---|---|---|
| EARP CONCRETE CUTTING INC | SUBMIT DATE | 02/04/2020 |
| 857 E SHAKESPEDARE DR | REPORT DATE | 12/2019 |
| VALPARAISO IN 46383-4129 | REPORT TYPE | Web -Online |
| (219)203-2622 | RECEIVED DATE | |

**ONLINE PAYMENT:**

PAYMENT DATE:  
PAYMENT AMOUNT:  

BANK NAME:

PAYMENT NOTE:

NUMBER OF LABORERS   3         COMMENT:  
REPORTED HOURS   34.50

| CNT | SOC SEC # | NAME | EXCEPTION | HOURS |
|---|---|---|---|---|
| 1 | | MICHAL MACIATA | | 9.50 |
| 2 | | TOMASZ LUKASZCYK | | 7.50 |
| 3 | | STANLEY SMITH | | 17.50 |

| FUND | RATE | CALCULATED AMOUNT |
|---|---|---|
| Welfare & Pension | 28.60 | 986.70 |
| Training | 0.90 | 31.05 |
| | | **1,017.75** |

## LABORERS' PENSION & WELFARE FUNDS
## CONTRACTOR LIQUIDATED DAMAGES HISTORY

| Contractor Number | 035767 | Phone | (219) 203-2622 |
|---|---|---|---|
| Contractor Name | EARP CONCRETE CUTTING INC | Status | Active |
| Address | 857 E SHAKESPEDARE DR | Outstanding Balance | $ 497.33 |
| | VALPARAISO IN, 463834129 | | |

| | | | | | TOTAL LD | | | | WELFARE LD | | | | RETIREE WELFARE LD | | | | PENSION LD | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice # | Report Month | Received Date | Trans # | LD % | LD $ | Adjustment | Payment | Write Off | Welfare LD | Welfare Adjustment | Welfare Payment | Welfare Write Off | Ret. Welfare LD | Ret. Welfare Adjustment | Ret. Welfare Payment | Ret. Welfare Write Off | Pension LD | Pension Adjustment | Pension Payment | Pension Write Off |
| 51472 | 10/2019 | 12/17/2019 | 1609070 | 10% | $ 98.68 | $ - | $ - | $ - | $ 35.02 | $ - | $ - | $ - | $ 16.70 | $ - | $ - | $ - | $ 46.96 | $ - | $ - | $ - |
| 51471 | 09/2019 | 12/17/2019 | 1609069 | 10% | $ 117.25 | $ - | $ - | $ - | $ 41.61 | $ - | $ - | $ - | $ 19.84 | $ - | $ - | $ - | $ 55.80 | $ - | $ - | $ - |
| 51284 | 08/2019 | 11/05/2019 | 1605424 | 10% | $ 205.86 | $ - | $ - | $ - | $ 73.06 | $ - | $ - | $ - | $ 34.84 | $ - | $ - | $ - | $ 97.96 | $ - | $ - | $ - |
| 51019 | 05/2019 | 09/18/2019 | 1600936 | 10% | $ 75.54 | $ - | $ - | $ - | $ 27.91 | $ - | $ - | $ - | $ 13.06 | $ - | $ - | $ - | $ 34.57 | $ - | $ - | $ - |
| | | | | | $ 497.33 | $ - | $ - | $ - | $ 177.60 | $ - | $ - | $ - | $ 84.44 | $ - | $ - | $ - | $ 235.29 | $ - | $ - | $ - |
| | | | | | $ 497.33 | | | | $ 177.60 | | | | $ 84.44 | | | | $ 235.29 | | | |

**Exhibit C**